In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3049

BENJAMIN BARRY KRAMER,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 14-cv-678 — **J. Phil Gilbert**, *Judge*

ARGUED APRIL 22, 2015 — DECIDED AUGUST 17, 2015

Before POSNER and KANNE, *Circuit Judges*, and DARRAH,
*District Judge*.*

KANNE, *Circuit Judge*.

---

*The Honorable John W. Darrah, of the United States District Court for
the Northern District of Illinois, sitting by designation.

## I. BACKGROUND

In 1988, Appellant Benjamin Barry Kramer was convicted of two offenses: (1) conspiring to distribute marijuana, in violation of 21 U.S.C. § 846; and (2) engaging in a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(b). As the result of a motion filed under 28 U.S.C. § 2255, Kramer's section 846 conviction and sentence were vacated in 1998. His section 848 conviction and sentence were affirmed. In June of 2014, Kramer filed another motion under section 2255 in the Southern District of Illinois, this time challenging his CCE conviction.

The district court dismissed Kramer's petition, concluding that it lacked subject matter jurisdiction over Kramer's claim. It characterized Kramer's motion as successive and thus barred by section 2255's prohibition of subsequent petitions. The district court issued a certificate of appealability on the question of whether Kramer's motion is properly characterized as successive. We affirm the district court's dismissal of Kramer's petition.

*A. Kramer's Trial and Conviction*

The government believed that between 1982 and 1986, Kramer and several associates imported large quantities of marijuana into the United States. On January 26, 1988, it indicted Kramer and several codefendants on multiple counts. Count 1 charged him with conducting a CCE, in violation of 21 U.S.C. § 848. Subsection (b) of that statute imposed a penalty of life imprisonment, if certain conditions were met. 21 U.S.C. § 848(b). Kramer was charged under subsection (b). Count 2 charged him with conspiring to distribute marijuana in violation of 21 U.S.C. § 846.

The version of section 848 in effect at the time of Kramer's offense defined a continuing criminal enterprise as follows:

> [A] person is engaged in a continuing criminal enterprise if—
>
> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
>
> (2) Such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
>
>> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
>>
>> (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c) (1988) (amended 2006).

So, in addition to the other statutory requirements, to convict Kramer of the CCE charge, the government had to prove that Kramer committed the requisite underlying felonies. *See* 21 U.S.C. § 848(c). The government was not required to seek or obtain convictions for those underlying offenses—indeed, Kramer could not have been charged with them, since the applicable statutes of limitation had already run. *See United States v. Kramer*, 955 F.2d 479, 487 (7th Cir. 1992) (citing *United States v. Young*, 745 F.2d 733, 747 (2d Cir. 1984) (holding "in order to support a § 848 charge, the government is not required to … obtain convictions on, any of the eligible predicate offenses, …")). The government

claimed that Kramer had committed a variety of eligible felonies: the indictment listed fourteen drug offenses allegedly committed by Kramer.[1]

The case went to jury trial in the Southern District of Illinois between June and October of 1988. The government presented evidence, including witness testimony, of the drug violations alleged in the indictment. Over Kramer's objection, one witness provided evidence of additional drug offenses that were not enumerated in the indictment.

Following the presentation of evidence, the district court instructed the jury to engage in a two-step process to determine whether the government had proven its CCE charge. First, the court stated, the jury had to determine whether Kramer had committed *any* eligible offense. If the jury concluded that Kramer had committed one such violation, it should proceed to the second step.

In the second step, the jury had to determine whether the offense that it found in step one was "part of a continuing series of violations," as required by subsection (c)(2). *See* 21 U.S.C. § 848(c)(2). The court instructed the jury that a "continuing series" meant "three or more violations." So, in addition to the violation it had found in step one, the jury had to conclude that Kramer had committed two additional eligible felonies. The court did not limit the jury to considering the section 846 charge and the fourteen violations listed in the indictment. The court told the jury that it could consider

---

[1] The indictment lists eighteen offenses, but four of those appear to apply only to one of Kramer's codefendants.

"any additional violations" of which the government produced evidence at trial.

Kramer raised a number of objections to the district court's jury instructions. As relevant here, Kramer requested that the court instruct the jury that it could consider only offenses alleged in the indictment. Additionally, he asked that the court instruct the jurors that they must unanimously agree on the same three acts as forming the predicates for the CCE charge. And finally, Kramer requested that the court use a special verdict form to record the verdict. The court denied all of these requests.

After five reported deadlocks, the jury convicted Kramer on both counts. He was sentenced to a forty-year prison term for the section 846 conviction, and he was sentenced to life without parole for the section 848(b) conviction.

*B. Kramer's Appeals, Habeas Petitions, and Relevant Case Law*

Kramer's subsequent procedural history is intertwined with a series of cases decided by this court and the United States Supreme Court. We present both together, in an attempt to provide a clear and concise explanation of this case's twenty-seven year history.

*1. Kramer's Direct Appeal*

Kramer filed his direct appeal in May 1989. As relevant here, that appeal alleged two errors requiring reversal. Kramer argued that the district court erred in (1) refusing to require juror unanimity as to the three predicate violations required for the "continuing series" element of the CCE count; and (2) allowing the jury to consider the section 846 charge as one of the predicate offenses of the CCE, because it actual-

ly constituted a lesser-included offense (and was therefore barred by the Double Jeopardy Clause).

Before we ruled on Kramer's appeal, we decided *United States v. Baker*, 905 F.2d 1100 (7th Cir. 1990). In that case, we concluded that a section 846 offense could not be counted as one of the section 848 "continuing series of acts," because a section 846 conspiracy was subsumed within the "concert aspect" of section 848(c). *Id.* at 104. In light of that determination, we allowed the parties to submit supplemental briefing on the issue.

In January 1992, we affirmed Kramer's convictions. *United States v. Kramer,* 955 F.2d 479, 492 (7th Cir. 1992). First, we concluded that the court was not required to instruct the jury that it must unanimously agree on the same three section 848 predicate offenses. We acknowledged, however, that a circuit split existed on that issue. Second, we acknowledged that our decision in *Baker* made clear that a section 846 charge could not be counted as one of the section 848 "continuing series" offenses. But we held that any error in allowing the jury to consider the section 846 count was harmless, because Kramer had been charged with many additional drug offenses. We concluded that "[t]hese offenses were more than adequate to meet the continuing series requirement of the CCE charge." *Id.* at 486.

### 2. *The Supreme Court's Decision in* Rutledge

The Supreme Court decided *Rutledge v. United States* in 1996, four years after we affirmed Kramer's conviction on direct appeal. 517 U.S. 292 (1996). Defendant Tommy Rutledge was convicted in the Central District of Illinois of one count of violating section 846 and of one count of violat-

ing section 848. *Id*. at 294. He was sentenced to life without parole on each count. *Id.* at 295. Rutledge challenged those convictions and sentences, arguing that they punished him twice for the same offense, in violation of the Double Jeopardy Clause. *Id.* at 296. We affirmed his convictions, finding no double-jeopardy violation. *Id.* The Supreme Court reversed. *Id.* at 307.

Applying the *Blockburger* test, the Court determined that the conspiracy defined in section 846 contained the same elements as the CCE offense defined in section 848. *Id.* at 300. As such, the two statutes constituted the same offense for purposes of double jeopardy: the section 846 conspiracy was a lesser-included offense of the section 848 CCE. *Id.* The Court then concluded that Congress had not clearly authorized punishment for both offenses. *Id.* at 302–07. Therefore, the Double Jeopardy Clause prohibited multiple punishment for sections 846 and 848. *Id.* at 307.

### 3. *Kramer's 1997 § 2255 Motion*

Having exhausted his direct-appeal remedies, on April 22, 1997, Kramer filed a section 2255 motion in the Southern District of Illinois, seeking a writ of habeas corpus. Of the several arguments Kramer advanced for vacating his convictions, the three relevant ones for this inquiry are: (1) in light of *Rutledge*, his separate convictions and punishments for violations of sections 846 and 848 violated the Double Jeopardy Clause; (2) the court's jury instructions on his section 848 count violated due process and the Double Jeopardy Clause; and (3) his appellate counsel was ineffective for having failed to effectively raise that issue on direct appeal.

On March 5, 1998, the district court issued its memorandum opinion and order. *See Kramer v. United States*, No. 97-Civ-4117-JLF (Mar. 5, 1998, S.D. Ill.). It agreed that, in light of *Rutledge*, one of Kramer's convictions must be vacated. The court vacated his conviction and sentence on the section 846 count, subject to reinstatement in the event that Kramer's section 848 conviction were later overturned.

The court rejected Kramer's second argument, that the jury instructions on his section 848 count violated due process and the Double Jeopardy Clause. To begin, the court concluded that it "was not entirely clear whether [Kramer] raised this precise issue on direct appeal." *Id.* at *3–4. If Kramer had not already raised the issue, he would have been required to show (1) good cause for failing to raise it, plus actual prejudice arising from that failure; or (2) that the court's refusal to address the claims would result in a fundamental miscarriage of justice. If Kramer had raised the claim on direct appeal, he would have been required to show changed circumstances in order to raise the issue again. The court concluded that Kramer did not meet either set of requirements for raising the issue in his motion. The court also rejected Kramer's argument that his counsel was ineffective for having failed to raise the issue at trial.

The following day, the district court issued its judgment. It vacated Kramer's section 846 conviction and sentence, and it denied his motion in all other respects. The district court denied Kramer's motion for a certificate of appealability on the other claims, and we did the same.

*4. The Supreme Court's Opinion in* Richardson

In 1999, the Supreme Court decided *Richardson v. United States,* yet another case on appeal from this court regarding a section 848 CCE conviction. 526 U.S. 813 (1999). The relevant facts in that case were virtually identical to those in Kramer's: at trial, "the judge rejected Richardson's proposal to instruct the jury that it must unanimously agree on which three acts constituted the series of violations. Instead, the judge instructed the jurors that they must unanimously agree that the defendant committed at least three federal narcotics offenses." *Id.* at 816 (internal quotations omitted). Richardson challenged that jury instruction. On appeal we held, on one side of a circuit split, that the judge's instruction was proper.

The Supreme Court reversed. It held that "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Id.* at 815. In other words, each underlying violation in the continuing series constitutes an element of the CCE offense.

*5. Kramer's 1999 Section 2241 and Section 2255 Motions*

In light of the Supreme Court's decision in *Richardson,* Kramer filed a petition in September of 1999 for a writ of habeas corpus in the Southern District of Illinois, seeking relief under 28 U.S.C. § 2241, or alternatively, 28 U.S.C. § 2255.

The district court ruled on Kramer's petition in July 2002. *See Kramer v. United States*, No. 99-Civ-0684-JLF (Jul. 25, 2002, S.D. Ill.). The court concluded that it lacked jurisdiction over

Kramer's section 2241 motion. At the time that Kramer filed his petition, he was incarcerated in a federal detention facility in Terre Haute, Indiana. As such, the court held that Kramer should have filed his motion in the Southern District of Indiana.

The court found that it lacked jurisdiction under section 2255, as well. A petitioner is required to seek authorization from the court of appeals to file a "second or successive" section 2255 motion. *See* 28 U.S.C. § 2255, ¶ 8. Without that authorization, the district court lacks jurisdiction over the petition. The district court concluded that Kramer had already pursued one section 2255 motion (the 1997 petition that resulted in the vacatur of his section 846 conviction). Therefore, Kramer was required to obtain permission from this court before pursuing another section 2255 motion. Without that permission, the court concluded, it lacked subject matter jurisdiction over the section 2255 claim. The court dismissed both motions without prejudice.

On December 20, 2002, Kramer refiled his petition, again under both sections 2241 and 2255, in the Southern District of Indiana. *See Kramer v. Olson*, No. 2:02-cv-00317 (Apr. 21, 2003, S.D. Ind.). That court concluded, as had the district court in the Southern District of Illinois, that Kramer's petition was successive under the language of the statute: Kramer had filed a previous section 2255 motion, and the district court had (in addition to the vacatur) denied him relief on his remaining claims. The district court then concluded that, under the two routes available to him, Kramer did not establish that the statute permitted him to file a successive

section 2255 motion.[2] Therefore, the district court concluded that it did not have jurisdiction over Kramer's motion.

Kramer appealed the district court's dismissal, and we affirmed. *See Kramer v. Olson,* 347 F.3d 214 (7th Cir. 2003) (per curiam).

*6.* Magwood *and* Suggs

In 2010, the Supreme Court decided *Magwood v. Patterson,* the case that forms the basis of Kramer's current section 2255 motion. 561 U.S. 320 (2010).

Billy Joe Magwood was convicted in Alabama state court of killing the Sheriff of Coffee County, and he was sentenced to death. Having exhausted his state remedies, he filed a petition for a writ of habeas corpus under section 2254 in the Middle District of Alabama. The district court upheld Magwood's conviction but vacated his death sentence. The Court of Appeals for the Eleventh Circuit affirmed.

The state trial court then held a resentencing hearing, and it again imposed the death penalty. After again exhausting his state court remedies, Magwood filed a section 2254 petition for a writ of habeas corpus, challenging his new death sentence. He argued that his death sentence was unconstitutional, because "he did not have fair warning at the time of

---

[2] *See* 28 U.S.C. § 2255, ¶ 5 (permitting a petitioner to bring a successive motion when the petitioner meets one of two listed criteria); *see also In re Davenport,* 147 F.3d 605, 611 (7th Cir. 1998) (establishing circumstances under which the petitioner could invoke section 2255's "savings clause," permitting a motion under section 2241); *Garza v. Lappin,* 253 F.3d 918, 922 (7th Cir. 2001) (same); *Taylor v. Gilkey,* 314 F.3d 832 (7th Cir. 2002) (same).

his offense that his conduct would be sufficient to warrant a death sentence under Alabama law." *Id.* at 328.

Under 28 U.S.C. § 2244(b)(3)(A), a petitioner is required to seek authorization from the court of appeals to file a "second or successive" section 2254 motion.[3] Without such authorization, the district court lacks jurisdiction over the petition. The district court, *sua sponte*, considered whether Magwood's motion was "second or successive" under section 2244(b)(3)(A). The court concluded that the petition was not successive, and it conditionally granted the motion. The court of appeals disagreed, concluding that Magwood's petition was successive, and therefore that the district court did not have jurisdiction to entertain the claim. The Supreme Court reversed.

On appeal, the government argued that the question of whether a petition was "second or successive" was "*claim-focused*". *Id.* at 331 (internal quotations omitted) (emphasis added). According to the government, "the phrase should be read to reflect a principle that a prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack." *Id.* The government argued that Magwood's fair-warning challenge had been available to him from the start: both when he was sentenced to death the first time and during his subsequent collateral review. Magwood failed to raise it then, and the government argued that this failure rendered his petition successive.

---

[3] The same requirements apply to motions under both section 2254 and section 2255.

The Court rejected the government's reading of section 2244(b)(3)(A). Noting that "second or successive" is a term of art in the habeas context, the Court turned to the phrase's statutory context to interpret it. It concluded that "second or successive" refers to the state court *judgment* being challenged. And in Magwood's case, he was challenging a judgment that had not been the subject of his first 2254 motion. His first death sentence, the subject of his prior section 2254 motion, had been vacated. The judgment that he now challenged was the death sentence that had been subsequently imposed, after a new sentencing hearing. Therefore, the Court concluded, Magwood's petition was not successive.

Just prior to concluding its opinion, the Court stated the following:

> The State objects that our reading of § 2244(b) would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction. The State believes this result follows because a sentence and conviction form a single "judgment" for purposes of habeas review. This case gives us no occasion to address that question, because Magwood has not attempted to challenge his underlying conviction. We base our conclusion on the text, and that text is not altered by consequences the State speculates will follow in another case.

*Id.* at 342 (emphasis in original). This language would be critical to our application of *Magwood* in *Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013).

In *Suggs*, defendant Alonzo Suggs was convicted of a federal drug offense and sentenced to 300 months in prison. Under section 2255, Suggs challenged his sentence, arguing that he received ineffective assistance of counsel regarding his sentencing guideline calculations. He succeeded: his sentence was vacated, and he was subsequently resentenced to 240 months in prison.

After his resentencing, Suggs obtained new information that he claimed established his innocence. He requested permission from this court to bring a second section 2255 motion, so that he could challenge his conviction in light of the newly-discovered evidence. We denied his request. He then filed a new motion under section 2255 in the district court. He argued that his motion "should not be barred as 'second or successive' because his resentencing imposed a new judgment such that his new motion under section 2255 should not be barred." *Id.* at 281.

So, the *Suggs* facts seemed to present precisely the question that the Supreme Court noted, without deciding, in *Magwood*: Suggs sought to challenge his underlying conviction, which had been undisturbed by the vacatur of his prior sentence and his resentencing. Did this constitute a "new judgment" under *Magwood*? If so, his section 2255 motion would be not be considered successive.

Prior to *Magwood,* our circuit precedent had established that "such motions after resentencing are not second or successive when they allege errors made during the resentencing, but they are second or successive when they challenge the underlying conviction. *Id.* at 282 (citing *Dahler v. United States*, 259 F.3d 763 (7th Cir. 2001)). Suggs argued, however, that the reasoning upon which *Dahler* was based could not

have survived *Magwood*. He contended that he should be permitted to challenge his *underlying conviction* as a first section 2255 motion.

We disagreed. We concluded that "because *Magwood* expressly declined to extend its holding to the facts before us here, it did not disturb our circuit's precedent, *Dahler,* which applies to Suggs' motion and required the district court to dismiss it as second or successive." *Suggs*, 705 F.3d at 282–83. We held that "*Magwood*'s application to these facts is not sufficiently clear for us to abandon principles of *stare decisis* based on what the Supreme Court itself called 'speculation' about how the Court would rule on an issue it expressly chose not to decide." *Id.* at 284. Judge Sykes dissented from this holding, stating that, in her view, "the Supreme Court's decision in *Magwood v. Patterson* … has displaced our decision in *Dahler v. United States.*" *Id.* at 285 (Sykes, J., dissenting).

*7. Kramer's Current Petition*

On June 12, 2014, Kramer filed a section 2255 motion in the Southern District of Illinois, seeking to vacate his section 848 conviction. The district court concluded, applying *Suggs*, that Kramer's motion was "second or successive." *See Kramer v. United States*, No. 14-cv-678 (Aug. 8, 2014, S.D. Ill.). It dismissed Kramer's petition for lack of jurisdiction, but it granted a certificate of appealability on the issue of whether "Kramer's pending motion was an unauthorized successive petition under *Magwood*." Kramer appealed.

## II. ANALYSIS

Underlying Kramer's current section 2255 motions is the Supreme Court's holding in *Richardson*. It is beyond dispute

that, in *Richardson*, the Supreme Court invalidated the very jury instruction that was employed in Kramer's case. If Kramer were tried today, the jury would be required to unanimously agree on the three predicate felonies used to make up the "continuing series" of CCE violations. There is no question that this requirement was not imposed on the jury that convicted Kramer in 1988. Kramer argues that it is fundamentally unfair to detain him, in light of *Richardson*'s holding that his jury instructions were infirm.

But Kramer faces a procedural hurdle imposed by section 2255 itself. There is no doubt that, on the merits, *Richardson* speaks to the very issue Kramer has raised throughout his confinement, on both direct and collateral review. But, based on the procedural requirements imposed by the statute, we cannot address the merits of Kramer's claim until we have established that we have jurisdiction.

Kramer is barred from bringing a successive section 2255 motion, unless his petition falls into one of the narrow exceptions permitted (noted above) for a subsequent motion.[4] Kramer argues, however, that his petition should be considered a *first*, non-successive motion. Acknowledging that our prior holding in *Suggs* would foreclose his claim if it applied, Kramer argues that *Suggs* should not be expanded to cover

---

[4] *See* 28 U.S.C. § 2255, ¶ 5 (permitting a petitioner to bring a successive motion when the petitioner meets one of two listed criteria); *see also In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) (establishing circumstances under which the petitioner could invoke section 2255's "savings clause," permitting a motion under section 2241); *Garza v. Lappin*, 253 F.3d 918, 922 (7th Cir. 2001) (same); *Taylor v. Gilkey,* 314 F.3d 832 (7th Cir. 2002) (same).

the circumstances of his claim. Kramer argues that *Magwood*'s reasoning dictates the conclusion that his claim is not successive. We disagree.

Kramer argues that *Suggs* is inapplicable to his case, because *Suggs* involved only the vacatur of a *sentence* and not an underlying *conviction*. Kramer's successful section 2255 motion resulted in the vacatur of a *conviction*. That difference, Kramer argues, renders *Suggs* distinguishable and his judgment "new" under *Magwood.*

Kramer is correct in stating that *Suggs* did not involve the prior vacatur of a conviction. But Kramer does not explain *why that distinction is meaningful* for the purposes of a *Magwood* analysis. Both Suggs and Kramer employed later section 2255 motions to challenge convictions that were undisturbed by their prior motions and judgments. In Kramer's case, the court expressly denied Kramer's requested relief on the section 848 conviction that is the subject of Kramer's current petition.

Indeed, Suggs had an arguably stronger claim than Kramer that, under *Magwood*, his motion should be considered non-successive. The conviction that Suggs sought to challenge was the very one that *resulted in* both the vacated and new sentences. In Kramer's case, he is seeking to challenge an *entirely separate* conviction. Only Kramer's section 846 conviction and sentence were implicated by his successful section 2255 motion. Both his sentence and his conviction for the section 848 were entirely undisturbed.

Moreover, underlying our decision in *Suggs* was the weight of *stare decisis*. The Supreme Court expressly declined to weigh in on the result in a case where a petitioner who

had raised a successful sentencing challenge under section 2255 and then later raised another 2255 claim challenging the underlying conviction. In light of that uncertainty, we concluded we were bound to continue to follow our own established precedent. This is no less true under Kramer's facts than under those presented in *Suggs.*

Finally, we acknowledge, as the district court did in granting Kramer's certificate of appealability, that "jurists of reason, like Judge Sykes in her *Suggs* dissent, would find debatable the issue of whether Kramer's pending motion was an unauthorized successive petition after *Magwood.*" *Kramer*, No. 14-cv-678 at *3. Judge Sykes's well-reasoned dissent thoroughly presented why *Magwood* could be read to have displaced our prior precedent in *Dahler. Suggs,* 705 F.3d at 285 (Sykes, J., dissenting). Indeed, as Judge Sykes pointed out, our opinion in that case reflected a circuit split on the *Suggs* issue that continues to the present time. *See Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d 1273, 1281 (11th Cir. 2014) (per curiam) (holding that petitioner's challenge of underlying conviction following resentencing was not successive); *Wentzell v. Neven,* 674 F.3d 1124 (9th Cir. 2012) (same); *Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010) (same); *see also, In re Lampton*, 667 F.3d 585, 589–90 (5th Cir. 2012) (holding, in circumstances almost identical to Kramer's, that petitioner's section 2255 challenge of section 848 conviction after the vacatur of an 846 conviction constituted a successive petition).

In our view, the real disagreement lies with *Suggs*, and Kramer does not ask us to revisit our opinion in that case. In addition, Kramer does not address what we see as the fundamental question underlying the circuit split: what constitutes the petitioner's "judgment"? The Eleventh Circuit con-

cluded, for example, that "[h]aving reviewed *Magwood* and the cases of other circuits, we return to the basic proposition [that] … there is only one judgment, and it is comprised of both the sentence and the conviction." *Insignares*, 755 F.3d at 1281. Having concluded that a conviction and sentence comprised *one judgment*, the Eleventh Circuit necessarily held that a resentencing results in an entirely new judgment. As such, the underlying conviction may then be challenged by a first—not successive—section 2255 motion.

So, we view *Suggs* as controlling the outcome here. We conclude that the district court properly characterized Kramer's section 2255 motion as successive, and the district court correctly concluded that it lacked jurisdiction over Kramer's motion.

Finally, Kramer raised several other arguments in his briefs to this court. We decline to reach them for two reasons. First, we confine our review to the question specifically certified by the district court on appeal. And second, at oral argument, Kramer withdrew his final two arguments.

### III. CONCLUSION

For the reasons above, we AFFIRM the judgment of the district court.