**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARL SIDNEY RACE,

*Petitioner-Appellant*,

v.

JAMES SALMONSEN,

*Respondent-Appellee*.

No. 23-35439

D.C. No.
1:23-cv-00007-
SPW-TJC

OPINION

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted November 22, 2024
Seattle, Washington

Filed March 13, 2025

Before: Ronald M. Gould, Kenneth K. Lee, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas;
Dissent by Judge Lee

# SUMMARY[*]

## Habeas Corpus

The panel vacated the district court's order dismissing *sua sponte* Carl Race's *pro se* 2023 habeas corpus petition seeking to set aside his 1996 conviction, and remanded.

The district court dismissed the petition as time-barred without prior notice and an opportunity to be heard. The district court observed that, under Habeas Rule 4, it should assess whether it plainly appears from the petition and any attached exhibits that the prisoner is not entitled to relief. The district court also cited the Advisory Committee Note on Rule 4, which comments that the district court should eliminate the burden that would be placed on the respondent by ordering an unnecessary answer. Addressing arguments made in a legal memorandum that accompanied Race's petition, the district court concluded that Race failed to make the showing necessary to trigger equitable tolling. Race was never notified that the court intended to dismiss his case before the order of dismissal was entered.

Applying Supreme Court and Ninth Circuit precedent, the panel held that the district court erred in dismissing the petition without providing Race notice and an opportunity to respond. The panel explained that the district court wrongly conflated Race's apparent awareness of his rights—evidenced by the memorandum accompanying his petition—with the court's own responsibility to provide Race with formal notice of his rights. The panel declined to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

adopt a novel rule that a district court's obligation to provide notice before dismissing a habeas petition of its own accord is satisfied by the contents of a petitioner's filing. While Rule 4 permits a court to raise timeliness issues *sua sponte*, it does not go so far as to do away with the requirement that a petitioner be provided notice and an opportunity to respond.

Dissenting, Judge Lee would affirm the dismissal of the habeas petition because he does not believe due process requires giving Race another chance to repeat the arguments he already made.

## COUNSEL

Nancy G. Schwartz (argued), N.G. Schwartz Law PLLC, Huntley, Montana, for Petitioner-Appellant.

Cori D. Losing (argued) and Bjorn Boyer, Assistant Attorneys General; Tammy K. Plubell, Appellate Chief; Austin Knudsen, Montana Attorney General; Office of the Montana Attorney General, Helena, Montana; for Respondent-Appellee.

**OPINION**

H.A. THOMAS, Circuit Judge:

The right to receive notice and the opportunity to be heard before the government takes action against an individual are at the heart of the right to due process. Without those fundamentals, the promise of due process would be a hollow one. We have therefore repeatedly declined to create an exception to the rule that, before dismissing a petition for writ of habeas corpus, the district court must provide the petitioner with notice of its intention to do so, and an opportunity to respond.

When the district court entered a *sua sponte* dismissal of Petitioner Carl Race's habeas petition without providing him prior notice of its intention to do so, it deprived him of this right. In taking this action, the court wrongly conflated Race's apparent awareness of his rights—evidenced by a legal memorandum accompanying his habeas petition—with the court's own responsibility to provide Race with formal notice of those rights. We therefore vacate the district court's order of dismissal and remand for the court to provide Race with the process to which he is entitled.

**I.**

**A.**

Race is a prisoner in the custody of the State of Montana. He is serving a sentence of four consecutive terms of life imprisonment, plus forty years, after having pled guilty, in June 1996, to two counts of deliberate homicide and two counts of attempted deliberate homicide in the Sixteenth Judicial District Court of Custer County, Montana. *Race v. Salmonsen*, No. CV-23-7-BLG-SPW-TJC, 2023 WL

3971967, at \*1 (D. Mont. June 13, 2023). Race appealed to the Montana Supreme Court, which, on October 21, 1997, affirmed his conviction. *State v. Race*, 946 P.2d 641, 644 (Mont. 1997). The Montana Supreme Court subsequently denied his petition for a rehearing on November 13, 1997. *Id.* He did not apply for relief to the Sentence Review Division, nor did he petition for a writ of certiorari in the United States Supreme Court. *Race*, 2023 WL 3971967, at \*1. Race subsequently filed three *pro se* petitions for postconviction relief in the state district court, in 1999, 2002, and 2017. *Id.* He has not filed a writ of habeas corpus in the Montana Supreme Court. *Id.* For purposes of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, Race's conviction became final on February 11, 1998, 90 days after the Montana Supreme Court's final ruling on his direct appeal. *Id.* at \*2.

## B.

On January 19, 2023, over twenty years after his state conviction became final—and well past the one-year statute of limitations for filing a petition under AEDPA—Race filed a *pro se* habeas petition in federal district court in Billings, Montana. 28 U.S.C. § 2244(d)(1)(A). In his petition, Race raised two grounds for relief: ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

Race accompanied his habeas petition with a lengthy legal memorandum, acknowledging that he was "aware that the delay in filing in Federal Court is exceedingly long" and making arguments as to why AEDPA's one-year statute of limitations should be tolled in his case. In his petition, Race cited to *Shinn v. Ramirez*, 596 U.S. 366 (2022); *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010); and *Collier v. Montana*, No. CV 15-79-BLG-SPW-TJC, 2020 WL

1394612 (D. Mont. Mar. 2, 2020), for the notion that his default should be excused, in addition to other state and federal case law. Among his arguments for equitable tolling, Race claimed that he was "abandoned by his attorney;" that "impairments" at his prison facility contributed to his inability to timely file his petition; and that his illiteracy, mental illness, and blindness all constituted an "extraordinary circumstance" excusing his delay.

The district court *sua sponte* dismissed Race's habeas petition as time-barred. *Race*, 2023 WL 3971967, at *4. The district court observed that, pursuant to Rule 4(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), it should assess whether "'it plainly appears from the petition and any attached exhibits that the prisoner is not entitled to relief.'" *Id.* at *1.[1] The district court also cited the Advisory Committee Note on Rule 4, which comments that the district court should "'eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'" *Id.* (citing Advisory Committee Note (1976), Rule 4, Habeas Rules).

Because Race's petition was filed beyond AEDPA's one-year statutory deadline, the district court observed that "Race must show cause why his petition should not be dismissed with prejudice as time-barred." *Id.* at *2. The district court then discussed the equitable tolling arguments made in Race's legal memorandum, specifically his contention that his mental impairment constituted an

---

[1] While the district court cited Rule 4(b), it likely intended to refer to Rule 4. While the Rules Governing Section 2255 Proceedings for the United States District Courts contain a Rule 4(b), the Rules Governing Section 2254 Cases contain only a Rule 4, the language of which matches the language quoted by the district court.

extraordinary circumstance excusing his delay. *Id.* at *2–3. The court found that Race had "not satisfied his burden to establish that he was in fact severely mentally impaired." *Id.* at *2. The court further found that, even assuming Race was impaired, his impairment did not prevent him from understanding the need to file a timely petition or from filing a petition, and that he had not exercised the diligence that the law requires. *Id.* at *3–4. Concluding that "[t]he showing necessary to trigger equitable tolling is demanding and reserved for rare cases," the district court thus dismissed Race's petition. *Id.* at *4. Finding that Race had "slept on his rights," the court also denied Race a certificate of appealability. *Id.* Race was never notified that the court intended to dismiss his case before the order of dismissal was entered.

We subsequently granted Race a certificate of appealability on the issue "whether the district court erred by dismissing [his] 28 U.S.C. § 2254 petition as untimely without prior notice and an opportunity to respond, including whether a dismissal pursuant to Habeas Rule 4 was appropriate." This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 2253. "We review de novo the district court's decision to dismiss a habeas petition on timeliness grounds." *Wentzell v. Neven*, 674 F.3d 1124, 1126 (9th Cir. 2012).

## III.

### A.

"Habeas Rule 4 provides that district courts 'must promptly examine' state prisoner habeas petitions and must dismiss the petition '[i]f it plainly appears . . . that the

petitioner is not entitled to relief.'" *Day v. McDonough*, 547 U.S. 198, 207 (2006) (alterations in original). Referencing Rules 4 and 5 of the Habeas Rules, the Supreme Court in *Day* held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Id.* at 209. Yet, neither the Supreme Court nor we have ever retreated from the notion that before a habeas petition can be dismissed on timeliness grounds, the district court must notify the petitioner and provide an opportunity for a response. Rather, the Court in *Day* took it as a given that the regular requirements of due process must be met: "Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id.* at 210.

Following *Day*, our court, in *Wentzell*, rejected a state's argument that, because it was "'unmistakably clear from the facts alleged in the petition' that it was untimely and that no equitable tolling or other special circumstances applied," a petitioner was not entitled to notice and an opportunity to be heard before the district court dismissed his habeas petition. 674 F.3d at 1126. As in this case, the district court dismissed Wentzell's petition as untimely "without ordering a response from the State, giving Wentzell notice of the grounds on which it was contemplat[ing] the dismissal would be based, or offering him an opportunity to respond." *Id.* at 1126.

We held that this was error. Relying upon our own precedent in *Herbst v. Cook*, 260 F.3d 1039 (9th Cir. 2001), we noted that "'[w]hen untimeliness is obvious on the face of a habeas petition, the district court has the authority to raise the statute of limitations *sua sponte* and to dismiss the petition on that ground.'" *Wentzell*, 674 F.3d at 1126 (quoting *Herbst*, 260 F.3d at 1042). But "'that authority,'" we explained, "'should only be exercised after the court

provides the petitioner with adequate notice and an opportunity to respond.'" *Id*. (quoting *Herbst*, 260 F.3d at 1043, and citing *Day*, 547 U.S. at 210). We emphasized that "[f]or a *pro se* petitioner like Wentzell, the court must make clear the grounds for dismissal and the consequences of failing to respond." *Id.*

## B.

Applying *Day*, *Herbst*, and *Wentzell* here yields a clear result: the district court erred in dismissing Race's petition without providing him notice and an opportunity to respond.

The State nevertheless urges that there is daylight between this case and our precedents because Race "admitted that his petition was untimely," "had a full opportunity to present his case for equitable tolling," and "the federal district court considered and rejected Race's arguments against tolling prior to dismissing" his case. In the State's view, the purpose of due process—affording the opportunity for "petitioners to respond to an affirmative defense that they have no obligation to affirmatively address in their opening petition and that they may not even be aware of"—has thus been fulfilled for Race. Arguing that our holding in *Wentzell* applies only in the "general" case, the State urges us to adopt the Fourth Circuit's holding in *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), that a *pro se* habeas petitioner must be afforded notice and an opportunity to respond to the court's intention to *sua sponte* dismiss his case "unless it is indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in § 2244(d)(1)."

The Fourth Circuit has not addressed in a published decision the impact of *Day* upon its holding in *Hill*. But even

assuming that its holding has survived *Day*, and that we were not bound by our own precedent in *Wentzell*, *see Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003), we would decline to create an exception to *Wentzell*. It should by now be axiomatic that "a person is entitled to notice *before adverse judicial action is taken against him*." *Herbst*, 260 F.3d at 1043 (quoting *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000)); *see also Wentzell*, 674 F.3d at 1126; *Day*, 547 U.S. at 210. Due process is not a concept so flimsy that a petitioner's own actions can sweep it away. We thus decline to adopt a novel rule that a district court's obligation to provide notice before dismissing a habeas petition of its own accord is satisfied by the contents of a petitioner's filing. While Rule 4 permits a court to raise timeliness issues *sua sponte*, it simply does not go so far as to do away with the requirement that a petitioner be provided notice and an opportunity to respond. To adopt such a rule could indeed have the perverse effect of penalizing a *pro se* petitioner for any initial effort he might make to show cause as to his delay in seeking relief.

## IV.

It may well be that, after Race is provided notice and an opportunity to respond, he will have nothing more to offer in defense of his delay. So be it. We did not quibble in *Wentzell* with the state respondent's position that it was "'unmistakably clear'" that no equitable tolling could apply to Wentzell's petition. 674 F.3d at 1126. Despite that potential, we held that "[n]either our decision in *Herbst* nor the Supreme Court's decision in *Day* . . . authorizes . . . an exception to the requirement that the court give a petitioner notice and an opportunity to respond." *Id.* We will not retreat from that holding today. The district court's decision dismissing Race's habeas petition is therefore **VACATED**,

and this case is **REMANDED** for proceedings consistent with our holding.

---

LEE, Circuit Judge, dissenting:

Due process guarantees an opportunity to be heard—and that is exactly what Carl Race received. *See Day v. McDonough*, 547 U.S. 198, 210 (2006). Race—who shot his estranged wife's family members and then set them on fire—filed a habeas corpus petition 26 years after his conviction. Perhaps recognizing that his claims were untimely, he preemptively addressed this in his petition, citing many cases over several pages. The district court still found his argument meritless and dismissed his petition sua sponte for missing the statute of limitations by over two decades. *Race v. Salmonsen*, 2023 WL 3971967, at *2 (D. Mont. June 13, 2023); *see* 28 U.S.C. § 2244(d)(1). Because I do not believe due process requires giving Race another chance to repeat the arguments he already made, I respectfully dissent and would affirm the dismissal of his habeas petition.

As the majority opinion suggests, neither 28 U.S.C. § 2254 nor Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts mandates providing notice or an opportunity to respond before a court can sua sponte dismiss a habeas petition as untimely. *See Day*, 547 U.S. at 210. But based on due process principles, we have held that a petitioner could be "entitled to adequate notice and an opportunity to respond *prior to*" a dismissal on statute of limitations grounds. *Herbst v. Cook*, 260 F.3d 1039, 1042–43 (9th Cir. 2001).

The key dispute between the majority opinion and this dissent is over the scope of *Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012). We held there that the district court had erred in dismissing the habeas petition as untimely without giving the "petitioner notice and an opportunity to respond," even though it was "unmistakably clear form the facts alleged in the petition that it was untimely . . . ." *Id.* at 1126 (cleaned up). Our decision in *Wentzell* must be read in the context of its facts: Because the statute of limitation is an affirmative defense invoked by the state, habeas petitioners typically will not raise or discuss timeliness grounds in their petitions. For example, the petitioner in *Wentzell* submitted a 424-page habeas petition but had only two conclusory and boilerplate sentences about timeliness. A petitioner thus will typically wait until the state has raised the statute of limitations defense in its papers before he responds. So perhaps it was reasonable for the *Wentzell* court to hold that due process required giving Wentzell notice and an opportunity to be heard on the timeliness issue—even if that argument appeared meritless on its face—because he had not fully presented his argument before the court. *But see Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002) (district court can sua sponte dismiss habeas petition if it is "indisputably clear" that petition is untimely); *Acosta v. Artuz*, 221 F.3d 117, 125 (2d Cir. 2000) (same).

But the facts here are different. Race thoroughly briefed the timeliness issue in his petition because the 26-year delay was an obvious elephant in the room. He started off in his brief by declaring that he "is aware that the delay in filing in Federal Court is exceedingly long." He then spent five full pages asserting "that he is entitled to have the statutory time limit tolled based on the [] facts and precedent case-law," citing twelve cases and two statutes. Race presents his delay

in terms of "procedural default," "Equitable Tolling," "mental impairment," "diligence," and § 2244(d)(1) "state created impediments." Despite his best efforts, his argument was meritless—and the district court sua sponte dismissed his petition. In sum, Race had actual notice and an opportunity to present his position on timeliness before the court dismissed his petition. *See Day*, 547 U.S. at 210. Due process requires no more than that.

The majority argues that it is still "a district court's obligation" to provide the requisite notice, which cannot be established by "a petitioner's own actions." But due process must be measured in the protections of a party, and not the duties or formalities of a court. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) ("due process, unlike some legal rules, is not a technical conception") (cleaned up). Indeed, our decision in *Wentzell* rested on making sure the petitioner fully understood and could respond to the grounds for dismissal, rather than notice for formal notice's sake. *See* 674 F.3d at 1126. Even today, Race cannot explain what he would add if given another opportunity to respond other than to request an "evidentiary hearing" (which is rarely granted and not warranted here). Given these facts, I believe that due process has not been swept away but has been satisfied.

I respectfully dissent.